UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA AND STATE OF INDIANA EX REL., WILLIAM DITTMANN, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) CAUSE NO. 2:15-CV-413-PPS-JEM ) |
| QUEST DIAGNOSTICS, INC. AND XEROX BUSINESS SERVICES, LLC, | ) ) ) |
| Defendants. | ) ) |

**OPINION AND ORDER**

This *qui tam* action was brought by William Dittmann on behalf of the United States and the State of Indiana alleging that through their implementation and administration of a private tobacco cessation program, Quest Diagnostics, Inc. and Xerox Business Services, LLC have defrauded both governments. The United States and State of Indiana declined to intervene in this action, and both Xerox and Quest seek dismissal of the action for failure to state a claim. [DE 19; DE 30.]

**Background**

The facts come from the Complaint, which I accept as true for present purposes. The basis of Dittmann's Complaint stems from the administration of the National Tobacco Control Program (the "NTCP"). The Center for Disease Control and Prevention's Office on Smoking and Health created the NTCP in 1999, which provides funding and technical support to state health departments, including Indiana. [DE 1 at

¶¶26-29.] The State of Indiana deposits federal funds received from NTCP into the Indiana Tobacco Use Prevention and Cessation trust fund, from which the Indiana Department of Health may expend money in the form of grants to various public or private entities to implement the long range plan. [*Id.* at ¶¶30-32.] The CDC also funds the Indiana Tobacco Quitline, which is operated by a company named Alere Wellbeing. [*Id.* at ¶¶33-34.] Dittmann alleges that Alere also receives grant money from the Trust Fund to subsidize its Quit for Life Program, a program that Xerox offers to its employees. [*Id.* at ¶¶35-36.]

Here is how the program works, according to Dittmann. Starting in 2015, Xerox assessed a $500 tobacco surcharge to every employee and their covered spouse/domestic partner enrolled in a Xerox medical plan. [*Id.* at ¶37.] In order to avoid the surcharge, Xerox requires that each employee and their covered spouse/domestic partner complete a wellness screening, which is administered for Xerox by Quest. [*Id.* at ¶39.] If a Xerox employee or their covered spouse/domestic partner's blood test is negative for cotinine, which is a bio marker for exposure to nicotine, then the surcharge is removed. But if their blood tests positive, they can still remove this surcharge by enrolling in Alere's Quit for Life program, which involves telephonic meetings with a "quit coach." [*Id.* at ¶¶40-41.]

Dittmann alleges that those who refuse to participate in the Xerox program are presumed to be tobacco users. [*Id.* at ¶46.] Dittmann refused to participate in the Xerox program and take the required tests. As a result, he alleges, he was falsely designated

as being a tobacco user in Xerox and Quest's "information and business systems" and, therefore assessed the $500 tobacco surcharge. [*Id.* at ¶¶47, 50.]

One might wonder, where's the false claim in all of this? Dittmann does allege in his Complaint that "[t]he evidence of tobacco users is reported to the CDC through the State of Indiana annually in order to make claims for federal money from the Trust Fund . . . [and that] the level of funding to those administering tobacco cessation programs, such as Alere, is determined on a per capita basis. Therefore each individual that is falsely labeled as a tobacco user is the basis for a false claim." [*Id.* at ¶¶55-56.] In addition, Dittmann alleges that "[t]he NTCP's contribution to the Indiana tobacco use prevention and cessation trust fund would be reduced if the defendants had not fraudulently misrepresented that William Dittmann and others like him were tobacco users . . . [and that] [t]he Indiana Department of Health's contributions from the Trust Fund to Alere would also be reduced had the defendants not fraudulently misrepresented that William Dittmann and others like him were tobacco users." [*Id.* at ¶¶59-60.]

Dittmann's complaint was filed under seal alleging that Xerox and Quest had violated the Federal False Claims Act as well as the Indiana False Claims Act. The Complaint also alleges state claim claims of unjust enrichment, payment by mistake, and defamation. [DE 1.] Both United States and the State of Indiana elected not to intervene in this action. [DE 11, 12.] The Complaint was subsequently unsealed and

Dittmann was directed to serve a copy on Quest and Xerox, both of whom timely moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). [DE 19, 30.]

**Discussion**

To survive such a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (internal quotation marks and citations omitted); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). I must accept as true all factual allegations in the Complaint and draw all reasonable inferences in favor of the plaintiff, but I am not required to accept "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Ashcroft*, 556 U.S. at 663.

Causes of action brought under the False Claims Act are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *U.S. ex rel. Gross v. AIDS Research Alliance-Chicago*, 415 F.3d 601, 604 (7th Cir. 2005). This means that a plaintiff must plead "with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "The complaint must state the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *U.S. ex rel. Grenadyor v. Ukrainian Village Pharmacy, Inc.*, 772 F.3d 1102, 1106 (7th Cir. 2014). In other words, to meet the requirements of Rule 9(b), a plaintiff must allege "the who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo*

*v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).  Failure to do so may results in dismissal under Federal Rule of Civil Procedure 12(b)(6).

The False Claim Act imposes civil liability for a series of actions under 31 U.S.C. § 3729(a).  For this case, we only need to concern ourselves with Section 3729(a)(1), which imposes civil liability on any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" by the government or "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(A)-(B).  To establish a claim under this section, a relator must prove three elements:  (1) a false or fraudulent claim; (2) that was presented, or caused to be presented, by the defendant to the United States for payment or approval; (3) with the knowledge that the claim was false.  *United States ex rel. Fowler v. Caremark RX, L.L.C.*, 496 F.3d 730, 740-41 (7th Cir. 2007) (*overruled on other grounds by Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907, 912 (7th Cir. 2009)).

Dittmann's complaint suffers from several fatal flaws.  First, Dittmann fails to allege that either Quest or Xerox submitted a claim to the Federal Government or the State of Indiana—let alone a false one.  Dittmann alleges as his basis for a False Claims Act violation that "defendants knowingly falsified the number of tobacco users employed by Xerox in the reports submitted to the CDC and other federal entities as well as the reports submitted to the State of Indiana . . . [and] [t]herefore, the claims for monies to fund the tobacco cessation programs utilized by the defendants are illegal

5

false claims." [DE 1 at ¶¶64-65, 71-72.]  The first problem with this allegation is that Dittmann has lumped together both defendants in this case and has not indicated which defendant, if any, falsified a report.  And this problem is indicative of the larger one, which is that this allegation is so generally pleaded that I cannot deduce what Dittmann alleges actually is happening.  For instance, I'm left wondering what these reports are that Dittmann references.  Who prepares them?  What information do they contain?  When and how often are they prepared?  From whom and to whom are they transmitted?  What are they used for?  Are they submitted for the purposes of receiving payment or funding?

Dittmann does not identify anywhere within his complaint a single report or an example of a report that Xerox or Quest would have sent to either the United States or the State of Indiana in which it reported the number of tobacco users it employed.[1]  So what Dittmann is asking is for me to infer an entire fraudulent scheme from the assertion that someone reports the number of believed tobacco users employed by Xerox to the CDC.  I simply cannot do this.  *See, e.g., United States ex rel. Clausen v. Laboratory Corp. of America, Inc.*, 290 F.3d 1301, 1312 (11th Cir. 2002) ("We cannot make assumptions about a False Claims Act defendant's submission of actual claims to the Government without stripping all meaning from Rule 9(b)'s requirement of specificity or ignoring that the 'true essence of the fraud' of a False Claims Act action involves an actual claim for payment and not just a preparatory scheme.").

---

[1] The Defendants say this is because none exists.  [DE 20 at 7; DE 31 at 7.]

Second, Dittmann fails to allege that either Xerox or Quest requested or received any payment from either the United States or the State of Indiana. In fact, Dittmann alleges only that Alere, which is not a party to this action, receives grant money from the Trust Fund. [*Id.* at ¶35.] That Xerox offers the opportunity to its employees to enroll in Alere's Quit for Life program to remove the $500 smoking surcharge does not constitute payment from the United States or the State of Indiana *to* Xerox. Furthermore, Quest isn't even a participant in the program and, therefore, certainly cannot be said to have requested or received any payment from the United States or the State of Indiana. Dittmann fails to come anywhere close to alleging that either Defendant requested or received payment from the United States or the State of Indiana as a result of an alleged false claim.

Finally, as I already touched on above, Dittmann's factual allegations are replete with vague and general allegations that do not meet the heightened standard of Rule 9(b). Dittmann fails to allege the who, what, when, where, and how of Defendants' alleged fraudulent scheme. *DiLeo,* 901 F.2d at 627. I don't know who Dittmann thinks made misrepresentations, to whom, when or how they were made, and what, if anything was the result. *See United States ex rel. Grenadyor v. Ukrainian Village Pharmacy, Inc.*, 772 F.3d 1102, 1106 (7th Cir. 2014) ("The complaint must state the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.") In summary, Dittmann has failed to allege even a plausible case that a

7

fraud has taken place, and he certainly hasn't alleged it with the degree of particularity required by Rule 9(b).  *See id.*

For all of these reasons, Dittmann's claim under the False Claims Act is dismissed without prejudice.  I will note that while any of the flaws I have discussed are individually fatal to Dittmann's False Claims Act claim, combined they demonstrate reckless pleading.  I caution Dittmann that if he attempts to replead this claim, he should only do so if he is able to remedy the issues raised in this Opinion, lest he face dismissal with prejudice.

Finally, I'm left with Dittmann's state law claims.  Seventh Circuit precedent and the principle of comity encourage me to relinquish supplemental jurisdiction over a state law claim once all federal claims have been dismissed.  *See* 28 U.S.C. § 1367(c)(3); *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 502 (7th Cir. 1999) ("[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial.")  28 U.S.C. § 1367(c)(3) provides that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."  Having dismissed Dittmann's lone federal claim against Xerox and Quest, I decline to exercise my supplemental jurisdiction over his remaining state law claims.

## Conclusion

Accordingly, for the aforementioned reasons, Quest Diagnostic, Inc.'s and Xerox Business Services, LLC's Motions to Dismiss for Failure to State a Claim, DE 19, DE 30, are **GRANTED** and the Complaint is **DISMISSED WITHOUT PREJUDICE**.

**SO ORDERED.**

ENTERED: February 27, 2017

s/ Philip P. Simon<br>
**PHILIP P. SIMON, JUDGE**<br>
**UNITED STATES DISTRICT COURT**